**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

| | |
|---|---|
| SHAIN SHAW, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Case No.: 9:21-cv-82148-KAM |
| v. | ) |
| | ) |
| CHIPOTLE MEXICAN GRILL, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DECLARATION OF TAMMY SIMPSON IN SUPPORT OF DEFENDANT CHIPOTLE MEXICAN GRILL, INC.'S MOTION TO COMPEL ARBITRATION

I, Tammy Simpson, declare and state as follows:

1.      I am over the age of eighteen and have personal knowledge of the facts set forth herein and, if called as a witness, I could and would testify competently as to them. I make this declaration in support of Defendant Chipotle Mexican Grill, Inc.'s ("Chipotle") Motion to Compel Arbitration.

2.      I am currently employed as a Senior Manager of Restaurant People Experience for Chipotle. As the Senior Manager of Restaurant People Experience, I have knowledge and information regarding Chipotle's electronic application, hiring, and onboarding procedures. I am familiar with Workday records relating to the individuals who work in the restaurants that are owned and operated by Chipotle and have reviewed the Workday records for Plaintiff Shain Shaw ("Shaw").

3.      Chipotle Mexican Grill, Inc. owns and operates "fast casual" restaurants that serve a focused menu of Mexican fare, consisting primarily of burritos, tacos, and salads. Chipotle Mexican Grill, Inc. does not employ the individuals who work in its restaurants. Instead, these

individuals are employed by Chipotle Services, LLC ("Chipotle Services"), which is a wholly owned subsidiary of Chipotle Mexican Grill, Inc.

4.     When an individual applies for a position with Chipotle, the potential new employee completes the onboarding process before the employment relationship with Chipotle begins. After the Company extends a conditional offer of employment, prospective candidates provide documents establishing eligibility to work in the United States and produce documents that establish both the candidate's identity and employment authorization as outlined in the standard I-9 Department of Homeland Security Form. Once the prospective candidate produces acceptable identifying documents, the electronic onboarding process is started by emailing a Workday link to the candidate's designated email address.

5.     Onboarding refers to the process through which the potential new employees formalize and finalize their employment relationship with Chipotle and is done through Workday, which is Chipotle's Human Resources software.

6.     The onboarding process is where potential new employees are shown the terms of the Arbitration Agreement ("Agreement"). The potential new employee can elect to accept the terms of the Agreement and move forward with their employment with Chipotle, or not accept them and decline employment with Chipotle. Once Shaw launched the Arbitration Agreement online via the Workday online portal, he was required to view the entire text of the Agreement by scrolling down on the screen-page.

7.     The onboarding system provides potential new employees with as much time as they need to review, ask questions, acknowledge, and e-sign the materials provided to them, including the Agreement. Each potential new employee may also access a PDF version of the Agreement, which they can print and review as a hard copy. The Agreement is a stand-alone

- 2 -

document titled "Agreement to Arbitrate" provided to Shaw when being onboarded with Chipotle and after a conditional offer of employment was made.

8.      Potential new employees are instructed to e-sign the Agreement by marking the "I Agree" box for the signature statement and clicking on the "Submit" button on the bottom of the page. No one at Chipotle has the ability to subsequently alter or complete onboarding forms on behalf of a prospective candidate for employment without the system recording the name of the person initiating the system change. Although a limited number of Chipotle's employees have the ability access and view Workday documents, myself included, no employee is able to alter or edit any Workday documents without leaving a digital thumbprint.

9.      Potential new employees are provided with unique log-in credentials for the onboarding process in Workday, such that there is no other individual who can use those credentials to complete the onboarding process. In the event that a candidate forgets their unique password, the candidate must initiate the process of creating an entirely new password. After a candidate electronically signs an onboarding form, the Workday System generates a date and time stamp saved to the Workday database.

10.      Chipotle conditionally hired Shaw on March 5, 2020, and he worked for Chipotle until on or about August 6, 2021.

11.      Attached hereto as **Exhibit A** is a true and correct copy of the Agreement that was used in the onboarding process at the time of Shaw's hire in 2020. I am the record custodian of Exhibit A, which was kept in the ordinary course of business.

12.      Attached hereto as **Exhibit B** is a true and correct copy of a screenshot from Workday reflecting how Chipotle presented the Agreement to Shaw during the onboarding process. As reflected in Exhibit B, the display demonstrates how each new employee may access

4880-3186-2789, v. 1

a PDF version of the Agreement, which they can print and review in hard copy. Exhibit B also demonstrates how new employees are instructed to e-sign the Agreement by marking the "I Agree" box for the signature statement and clicking on the "Submit" button on the bottom of the page.

13.     Attached hereto as **Exhibit C** is a true and correct copy of the Workday record of the onboarding process for Shaw. I am considered a records custodian for Exhibit C, which was also kept in the ordinary course of business. As reflected in Exhibit C, Shaw reviewed, acknowledged, and e-signed the Agreement at 10:12:46 a.m. EST on March 5, 2020. Based on security protocols and functionalities of the Workday System, Shaw is the only person who could have electronically signed his name on the Arbitration Agreement. Accordingly, Shaw's electronic signature on the Arbitration Agreement is attributable as an act of Shaw.

14.     Based on my review of Shaw's Workday records, as well as my personal knowledge concerning Chipotle's electronic application, hiring, and onboarding procedures, Shaw completed the onboarding process and electronically signed the Agreement at 10:12:46 a.m. EST on March 5, 2020.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 7th day of December, 2021.

# Tammy Simpson

Tammy Simpson

Signature: *Tammy Simpson*
Tammy Simpson (Dec 7, 2021 15:37 PST)
Email: tammy.simpson@chipotle.com

4880-3186-2789, v. 1

# EXHIBIT A

Original - 8/1/2014

## AGREEMENT TO ARBITRATE

THIS AGREEMENT TO ARBITRATE ("Agreement") is entered into between Chipotle and the undersigned employee ("Employee"). "Chipotle" means Chipotle Mexican Grill, Inc., a Delaware corporation, and its direct and indirect subsidiaries and affiliates.

1.      Arbitration Overview.  In arbitration, each side in the dispute presents its case, including evidence, to a neutral third party called an "arbitrator," rather than to a judge or jury. The arbitrator generally is either an attorney or a retired judge. The parties are entitled to be represented by their own legal counsel in the arbitration proceeding. After reviewing the evidence and considering the arguments of the parties, the arbitrator makes a final decision to resolve the dispute.

2.      Duty to Arbitrate.  In consideration of Chipotle's offer of employment to Employee and the at will employment relationship between Chipotle and Employee, Chipotle and Employee hereby agree that any and all Claims (defined below in Section 4) shall be resolved by final and binding arbitration in accordance with this Agreement.

3.      Arbitration Rules.  By signing this Agreement, the parties agree that any arbitration shall be conducted before one neutral arbitrator selected mutually by the parties and shall be conducted under the Employment Arbitration Rules and Procedures of JAMS ("JAMS Rules"), which you can access from this link. This Agreement shall be enforceable under and subject to the Federal Arbitration Act, 9 U.S.C. Sec. 1, *et seq.*, and all rules, regulations, and judicial opinions enforcing or interpreting the same, as any of the same may be amended from time to time.

4.      Claims Subject to Arbitration.  As used in this Agreement, "Claims" means any and all disputes, claims, and controversies arising out of or relating to this Agreement, the parties' employment relationship, or the formation, existence, or termination of the parties' employment relationship, including but not limited to all claims for: wrongful termination; breach of any contract or covenant, oral or written, express or implied; breach of any duty owed to Employee by Chipotle or to Chipotle by Employee; personal, physical or emotional injury; fraud, misrepresentation, defamation, and any other tort claims; wages or other compensation due; penalties; benefits; reimbursement of expenses; discrimination or harassment, including but not limited to discrimination or harassment based on race, sex, pregnancy, religion, national origin, ancestry, age, marital status, physical disability, mental disability, medical condition, sexual orientation, or genetic information; retaliation; violation of any federal, state or other governmental constitution, statute, ordinance, rule, or regulation (as originally enacted and as amended), including but not limited to Title VII of the Civil Rights Act of 1964 ("Title VII"), Age Discrimination in Employment Act of 1967 ("ADEA"), Americans With Disabilities Act ("ADA"), Fair Labor Standards Act ("FLSA"), Employee Retirement Income Security Act ("ERISA"), Consolidated Omnibus Budget Reconciliation Act ("COBRA"), Family and Medical Leave Act ("FMLA"), and state and local government wage and hour, discrimination, leave, and other laws of every type; unfair business practices; disclosure of confidential information or trade secrets; pirating employees; and employee theft or conversion.  As used herein, "Claims" does not mean any dispute the arbitration of which is prohibited by law.

5.      Arbitration of Individual Claims Only.

        5.1     Class and Collective Action Claims.  BY SIGNING THIS AGREEMENT, THE PARTIES AGREE THAT EACH MAY BRING AND PURSUE CLAIMS AGAINST THE OTHER ONLY IN HIS, HER, OR ITS INDIVIDUAL CAPACITY, AND MAY NOT BRING, PURSUE, OR ACT AS A PLAINTIFF OR CLASS MEMBER, IN ANY PURPORTED CLASS OR COLLECTIVE PROCEEDING.

        5.2     Representative Action Claims.  THE PARTIES FURTHER AGREE THAT, EXCEPT FOR ACTIONS BASED ON THE CALIFORNIA PRIVATE ATTORNEYS GENERAL ACT, LABOR CODE SECTIONS 2698, ET SEQ., NEITHER PARTY MAY BRING, PURSUE, OR ACT AS A PLAINTIFF OR REPRESENTATIVE IN ANY PURPORTED REPRESENTATIVE PROCEEDING OR ACTION, INCLUDING ANY CLAIMS UNDER ANY FEDERAL, STATE, OR LOCAL LAW, OR OTHERWISE PARTICIPATE IN ANY SUCH REPRESENTATIVE PROCEEDING OR ACTION OTHER THAN ON AN INDIVIDUAL BASIS.

{01346986 / 2}

1

6.      Starting Arbitration and Costs.  Either party may initiate arbitration by delivering a written request to arbitrate to the other party listing the Claim(s) to be arbitrated. Requests to Chipotle shall be delivered to Chipotle Mexican Grill, Inc., 1401 Wynkoop Street, Suite 500, Denver, CO 80202, Attn: Tim Spong, Executive Director of Safety, Security, and Risk, with a copy to Messner Reeves LLP, 1430 Wynkoop Street, Suite 300, Denver, CO 80202, Attn: Bryant S. "Corky" Messner.  Requests to Employee shall be delivered to the last home address provided by the Employee to Chipotle in writing.  The arbitration shall take place in the county where Employee last was employed by Chipotle.

7.      Cost of Arbitration.  Employee shall not be required to pay any cost or expense of the arbitration that Employee would not be required to pay if the matter had been heard in court.

8.      Arbitrator's Authority.  The arbitrator shall apply state and/or federal substantive law to determine issues of liability and damages regarding all claims to be arbitrated. The arbitrator shall have the authority to order such discovery by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration.  The arbitrator is authorized to award any remedy or relief that would have been available to the parties, in their individual capacity, had the matter been heard in court.  Other than the limitations contained in Section 5 above, nothing in this Agreement shall prohibit or limit the parties from seeking provisional remedies, including, but not limited to, injunctive relief from a court of competent jurisdiction.  The arbitrator shall award reasonable attorneys' fees and costs to a party if such award is required by applicable law; if an award of attorneys' fees and costs is not required, the arbitrator shall have authority, subject to applicable law, to award reasonable attorneys' fees and costs in the arbitrator's discretion.  No arbitrator shall have the authority to impose any limit on Chipotle's discretion to discipline or discharge any employee, except as otherwise provided by law. This Agreement shall not be construed to deprive a party of a substantive right preserved by law.

9.      Written Decision.  The decision of the arbitrator shall be in writing and shall provide the reasons for the arbitrator's award, unless the parties otherwise agree in writing. THE ARBITRATOR'S DECISION IS FINAL AND BINDING, WHICH MEANS THERE WILL BE NO TRIAL BY A JUDGE OR JURY OR APPEAL OF THE ARBITRATOR'S DECISION EXCEPT AS REQUIRED BY APPLICABLE LAW.

10.     Entire Agreement.  This Agreement is the final, complete, and exclusive agreement between the parties concerning how the parties will resolve disputes and Claims.  The terms of this Agreement supersede and control any prior agreements, oral discussions, and oral or written communications among the Parties concerning how the parties will resolve disputes and Claims.  The original version of this Agreement is in the English language. Any discrepancy or conflict between the English version and any other language version shall be resolved with reference to and by interpreting the English version.

11.     Severability.  If any provision of this Agreement is determined to be illegal or unenforceable, such determination shall not affect the balance of this Agreement, which shall remain in full force and effect, and such invalid provision shall be deemed severable.  BY SIGNING THIS AGREEMENT, THE PARTIES HEREBY WAIVE THEIR RIGHT TO HAVE ANY CLAIM (AS DEFINED ABOVE IN SECTION 4) DECIDED BY A JUDGE OR JURY IN A COURT.

12.     At Will Employment Status.  Once it begins, Employee's employment with Chipotle will be at will, meaning Employee's employment may be terminated by Chipotle or the Employee without prior notice at any time, without any procedure or formality, and for any reason or for no reason.  Nothing herein shall alter, and no arbitrator has authority to alter, the at will nature of Employee's employment.

13.     Acknowledgement.  EMPLOYEE ACKNOWLEDGES THAT EMPLOYEE HAS CAREFULLY READ THIS AGREEMENT, THAT EMPLOYEE UNDERSTANDS ITS TERMS, AND THAT EMPLOYEE HAS ENTERED INTO THIS AGREEMENT VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS BY CHIPOTLE OTHER THAN THOSE CONTAINED IN THIS AGREEMENT.

**[Signature Page Follows]**

{01346986 / 2}

## ACKNOWLEDGMENT

Please read each of the statements below.

I understand that I have signed an Agreement to Arbitrate.

I had an opportunity to read, ask questions about, and consider the terms of the Agreement to Arbitrate before I signed it.

I understand the terms of the Agreement to Arbitrate.

I understand that I have freely and voluntarily waived my right to have any employment-related Claims decided by a judge and/or a jury.

I understand that I have freely and voluntarily waived any opportunity to participate in any class action or collective lawsuit for any Claims.

I understand that Chipotle will provide me with a copy of the Agreement to Arbitrate upon my request.

Please check this box to acknowledge that you've read and agree to the statements above _____

## SIGNATURE

This Agreement to Arbitrate has been entered into and executed as of the date signed electronically by the Employee.

**EMPLOYEE:**

Date: _____

Name: _____

Employee #: _____

Signature: _____

**CHIPOTLE:**

Name:       **Monty Moran** _____

Title:        **Co-CEO** _____

Signature:       _____

# EXHIBIT B

## Documents

**Document**        Acknowledgement of Arbitration Agreement

PDF

**Instructions**    Electronic Signature for Arbitration Agreement

**Signature Statement**   Agreement

Please read each of the statements below.

- I understand that I have signed an Agreement to Arbitrate.
- I had an opportunity to read, ask questions about, and consider the terms of the Agreement to Arbitrate before I signed it.
- I understand the terms of the Agreement to Arbitrate.
- I understand that I have freely and voluntarily waived my right to have any employment-related Claims decided by a judge and/or a jury.
- I understand that I have freely and voluntarily waived any opportunity to participate in any class action or collective lawsuit for any Claims.
- I understand that Chipotle will provide me with a copy of the Agreement to Arbitrate upon my request.

Acknowledgment: I acknowledge that I've read and agree to the statements above.

**I Agree**    ☐

**Comment**

**Submit**      Save for Later      Cancel

# EXHIBIT C



View Worker: Shain Shaw (Terminated)

| Document | Effective Date | Document Attachment | Signature Type | Signed By | Signature Date | Signature Statement |
|---|---|---|---|---|---|---|
| Environmental Awareness | 01/01/1900 | Environmental Awareness.pdf | e-signature | Shain Shaw (Terminated) | 03/05/2020 10:12:46 AM | I acknowledge and have reviewed the attached document. |
| Acknowledgement of Arbitration Agreement | 02/27/2017 | Agreement to Arbitrate.pdf | e-signature | Shain Shaw (Terminated) | 03/05/2020 10:12:46 AM | I acknowledge and agree to the terms of the Arbitration Agreement. |
| Cultivate Me Tuition Assistance Plan U.S. | 03/29/2019 | Cultivate Me Tuition Assistance Plan 4.1.19.pdf | Acknowledgment | Shain Shaw (Terminated) | 03/05/2020 10:12:46 AM | Please review the policy and acknowledge your receipt.  Once acknowledged you will continue the hiring process. |
| Shoes for Crews | 06/28/2018 | Shoes for Crews_06.26.18.pdf | e-signature | Shain Shaw (Terminated) | 03/05/2020 10:12:46 AM | By e-signing below, I acknowledge that I have read and understand the Shoes for Crews policy. |